USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/10/2012

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
CHIKEZIE OTTAH,

                Plaintiff,

    -against-

VERIFONE SYSTEMS, INC.,

                Defendant.
------------------------------------------------------------X

11 Civ. 6187 (RMB)

**OPINION & ORDER**

    Having reviewed the record herein, including **(i)** the amended pro se complaint of Chikezie Ottah ("Plaintiff" or "Ottah"), filed on February 7, 2012, against VeriFone Systems, Inc. ("Defendant" or "VeriFone"), alleging that VeriFone's fixed mounts for electronic displays in New York City taxicabs infringe his rights in United States Patent No. 7,152,840 (the "'840 Patent") and Australian Patent No. 2,003,231,638 (the "Australian Patent") covering a removable "book holder" (Am. Compl., dated Feb. 6, 2012); **(ii)** the '840 Patent, dated December 26, 2006, containing a single claim for a "book holder for removable attachment" (Decl. of Cosmin Maier, dated June 4, 2012 ("Maier Decl."), Ex. 1); **(iii)** VeriFone's motion for summary judgment, filed April 20, 2012, arguing, among other things, that (a) VeriFone's mounts do not "literally infringe" the '840 Patent because they do not include, among other things, "a telescoping arm, a clasp at one end of the arm with resilient clip arms for removably attaching the book holder, and a book support platform pivotally attached to the arm and having clamps on a front surface to hold a book"; (b) VeriFone's mounts do not infringe under the "doctrine of equivalents" because Ottah previously argued to the United States Patent and Trademark Office ("USPTO") that his book holder "can be attached quickly, removably, and without tools," whereas VeriFone's mounts are riveted in place for "permanent attachment"; and (c) with respect to the Australian

Patent, Ottah "does not allege any products or sales, or other acts in Australia relating to infringement" (Mem. in Supp. of Def.'s Mot. for Summ. J. of Non-Infringement, dated Apr. 20, 2012 ("Def. Mem."), at 1, 14–17); **(iv)** Plaintiff's opposition, filed May 21, 2012, arguing, among other things, that (a) it is "obvious[] without a doubt" that the VeriFone mounts infringe the '840 Patent; (b) the '840 Patent "anticipated the technological development" of fixed installation in the partition of a motor vehicle; and (c) the Australian Patent "is to establish[] authority" of the '840 Patent (Mem. in Opp'n of Def. Mot. for Summ. J. of Non-Infringement, dated May 21, 2012 ("Pl. Opp'n"), at 5, 10, 12); **(v)** VeriFone's reply, filed June 4, 2012 (Reply in Supp. of Def.'s Mot. for Summ. J. of Non-Infringement, dated June 4, 2012 ("Def. Reply")); **(vi)** the Decision & Order, dated February 17, 2012, of United States District Judge Colleen McMahon finding in a separate action that the '840 Patent neither literally infringed nor infringed under the doctrine of equivalents a "vehicular computer docking station" manufactured by First Mobile Technologies, see Ottah v. First Mobile Techs., No. 10 Civ. 7296, 2012 WL 527200 (S.D.N.Y. Feb. 17, 2012); **(vii)** the transcript of the conference before the Court on March 19, 2012 in which the parties waived oral argument (Hr'g Tr., dated Mar. 19, 2012, at 6:4–16); and **(viii)** applicable legal authorities, **the Court hereby grants VeriFone's motion for summary judgment as follows:**

**No Literal Infringement**

Defendant argues that the VeriFone mounts "lack many elements of the sole claim of the '840 [P]atent." (Def. Mem. at 1.) Plaintiff argues that the VeriFone mounts "have the same parts and function" as the '840 Patent. (Pl. Opp'n at 13.)

"An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the

properly construed claims to the device accused of infringing." Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (internal citations omitted). Where "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, [] claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005). "[T]o find infringement, the accused device must contain each limitation of the claim, either literally or by an equivalent." TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc., 529 F.3d 1364, 1379 (Fed. Cir. 2008) (internal quotation marks omitted). "If, however, even one claim limitation is missing or not met, there is no literal infringement." MicroStrategy Inc. v. Bus. Objects, S.A., 429 F.3d 1344, 1352 (Fed. Cir. 2005).

First, the Court finds that the '840 Patent's sole claim consists of commonly understood words, such as "a book holder," "for removable attachment," "a clasp," and "an arm." See Phillips, 415 F.3d at 1314. The claim reads as follows:

> 1. A book holder for removable attachment, the book holder comprising:
>
> a book support platform, the book support platform comprising a front surface, a rear surface and a plurality of clamps, the front surface adapted for supporting a book, the plurality of clamps disposed on the front surface to engage and retain the book to the book support platform, the rear surface separated from the front surface;
>
> a clasp comprising a clip head, a clip body and a pair of resilient clip arms, the clip arms adjustably mounted on the clip head, the clip head attached to the clip body; and
>
> an arm comprising a first end and a second end and a telescoping arrangement, the clasp on the first end, the second end pivotally attached to the book support platform, the telescoping arrangement interconnecting the first end to[] the second end, the clasp spaced from the book support platform wherein the book holder is removably attached and adjusted to a reading position by the

> telescoping arrangement axially adjusting the spaced relation between the book support platform and the clasp and the pivotal connection on the book support platform pivotally adjusting the front surface with respect to the arm.

(Maier Decl. Ex. 1.)

Second, the Court finds the VeriFone mounts do not contain (at least) several of the limitations in the '840 Patent claim, including "[a] book holder for removable attachment"; "[a] plurality of clamps disposed on the front surface to engage and retain the book"; "[a] clasp spaced from the book support platform wherein the book holder is removably attached"; "[a] telescoping arrangement axially adjusting the spaced relation between the book support platform and the clasp"; and "[a] pivotal connection on the book support platform pivotally adjusting the front surface with respect to the arm." (Maier Decl. Ex. 1); see MicroStrategy, 429 F.3d at 1352.

VeriFone's mounts are anything but removable. They are "riveted in place to the taxi's partition or seat" to discourage tampering and stealing of electronic displays (Def. Mem. at 15), and are unlike Plaintiff's book holder which is "easily and removably attached" (Maier Decl. Ex. 1). See Ottah, 2012 WL 527200, at *7 ("The ability to attach and remove quickly, which, as discussed above, is a primary feature of the '840 Patent, is not 'substantially the same' as drilling into floorboards.").

Accordingly, the VeriFone mounts do not literally infringe the '840 Patent. See MicroStrategy, 429 F.3d at 1352.

**No Infringement under the Doctrine of Equivalents**

Defendant argues that Ottah is precluded from relying upon the doctrine of equivalents because, in prosecuting his patent before the USPTO, Ottah previously argued that removal is critical, i.e., "the use of adjustable, resilient clip arms . . . for clasping the book holder to the movable vehicle providing quick removal and attachment without tools . . . is not obvious in

4

light of the prior art." (Def. Mem. at 16–17.) Plaintiff argues that the '840 Patent "anticipated the technological development" of (fixed) installation in a "vehicle back seat or partition." (Pl. Opp'n at 10.)

"[T]he doctrine of prosecution history estoppel limits the doctrine of equivalents when an applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner." Am. Calcar, Inc. v. Am. Honda Motor Co., Inc., 651 F.3d 1318, 1340 (Fed. Cir. 2011) (internal quotation marks omitted). "The touchstone of prosecution history estoppel is that a patentee is unable to reclaim through the doctrine of equivalents what was surrendered or disclaimed in order to obtain the patent." Loral Fairchild Corp. v. Sony Corp., 181 F.3d 1313, 1322 (Fed. Cir. 1999).

Prosecution history estoppel bars Ottah's claim of infringement under the doctrine of equivalents. See Duramed Pharm., Inc. v. Paddock Labs., Inc., 644 F.3d 1376, 1380 (Fed. Cir. 2011). On January 21, 2005, the USPTO rejected Ottah's initial patent application because, among other reasons, his claim was not different from "prior art." (Maier Decl. Ex. 2.) By Preliminary Amendment, filed July 25, 2005, Ottah narrowed the scope of his claim and argued that "the use of adjustable, resilient clip arms on the clasp for clasping the book holder to the movable vehicle providing quick removal and attachment without tools . . . is not obvious in light of the prior art." (Maier Decl. Ex. 2.) That is, Ottah focused specifically on removably, not on fixed (i.e., riveted) installation. Judge McMahon's reasoning in Ottah's suit against First Mobile Technologies is compelling. See Ottah, 2012 WL 527200, at *8. In finding that Ottah's prosecution history estopped his infringement claim under the doctrine of equivalents, Judge McMahon found as follows:

> Ottah may not rely and focus on the easy removability of his
> invention without tools in order to acquire the '840 Patent and then

> expand the scope of that patent later by equating that same feature
> to other more difficult and tool-requiring methods of attachment.
> In other words, only a product which can be attached quickly,
> removably, and without tools, in a manner akin to that of the '840
> Patent, can infringe that patent.

Id. Here, because Ottah previously argued that the defining characteristic of his book holder is its "quick removal and attachment without tools," he cannot now claim that the permanent rivet attachments of the VeriFone mounts are "equivalent" to the limitations described in the '840 Patent. See id.

Accordingly, the VeriFone mounts do not infringe the '840 Patent, and summary judgment is granted. See Duramed, 644 F.3d at 1380.

**Australian Patent**

Defendant argues that Ottah "does not allege any products or sales, or other acts in Australia relating to infringement" of the Australian Patent. (Def. Mem. at 14.) Plaintiff argues that the Australian Patent "offer[s] the defendant a second opinion on . . . [the] authenticity" of the '840 Patent. (Pl. Opp'n at 12.)

Assuming, arguendo, that Plaintiff is seeking enforcement of the Australian Patent (which is unclear from the record), the Court would decline to exercise supplement jurisdiction over Ottah's foreign law patent claim under 28 U.S.C. § 1367(c) because, as discussed supra pp. 2–6, the Court has dismissed all of Ottah's U.S. patent claims over which it has original jurisdiction. See Voda v. Cordis Corp., 476 F.3d 887, 898 (Fed. Cir. 2007).

**Conclusion & Order**

For the foregoing reasons, VeriFone's motion for summary judgment [#25] is granted.

The Clerk of the Court is respectfully requested to close this case.

Dated: New York, New York
October 10, 2012

*RMB*

RICHARD M. BERMAN, U.S.D.J.